Good afternoon. Cases, a trademark case and three government employee cases. The latter three are being submitted on the briefs and will not be argued. So we have three argued cases, sort of. First one is Amini Innovation v. Anthony CA, is it? 06-1096, Mr. Sislo, and you don't have to reserve any time for rebuttal because you have no one to rebut. So you can use all your time. Fifteen minutes. Good afternoon. Thank you very much for the opportunity to be here today. And hopefully I won't be in a position of Abraham Lincoln having to argue his adversary's position at losing on that point. And I'd just like to state that there is an earlier case that has some bearing on this case. And it was a case involving copyright infringement and a motion for summary judgment where this court basically said there were questions of fact for the jury to consider. Same party, same line of furniture, right? That's right. So how would you distinguish yourself? I would say that there's really not much distinguishing feature here because of the fact there's a slightly different standard with regards to copyright. There's a substantial similarity, and here is it substantially the same, such that you're going to create this type of confusion or consumer confusion. And what the Federal Circuit did in that case is they basically remanded the case back to the court to allow the jury to make a determination as to whether or not there was substantial similarity of the furniture. And the jury did make that finding that there was not only substantial similarity in copyright infringement, also willful infringement. Here we've got the exact same furniture, maybe a little bit different standard because it is a design patent. But in this particular case, the district court did not have the benefit of the first immediate decision because the district court made its determination before that case came out. And fortunately, the court made the same mistake the second time as it did the first time by construing the claims improperly and by asserting itself as a fact finder to determine whether or not the ordinary observer would believe that there would be confusion. Why can't the judge in the first place recognize the incredible narrow application of a design patent and in the second place recognize his own role as ordinary observer and make that call without the expense of a jury trial? In this particular case, because the standard must be what is the ordinary observer, and the district court in this case construed the differences between the furniture and then said, hey, this is the design. And then tried to say that, well, since the accused product doesn't have these differences in this dissection approach, there's no infringement. But in reality, the case law of this court and the Gorham case, if you look at the design as a whole, otherwise you have this pernicious urban myth out there. If you just take a design patent, change it 5%, you don't infringe. That has never been this court's articulated test for whether or not you can avoid infringement. How is an ordinary observer supposed to look at this? I can look at these two items and say, gee, they sure look the same to me. Look at this. Really, I don't have to articulate all the similarities. But then when I look carefully, I see at least three differences. How is the ordinary observer test applied? Does one have to be a very careful observer or does one have to look just generally and casually? What's the test? I think the test is those people who are out there in the marketplace buying this product. And because there is kind of a trap here is if you say, let's take the design, cut it up, dissect it, and then look at each little feature and say, is this exactly found? This feature in the other design? That's not what the test is. That might be important for the novelty test, the point of novelty to see what are the novel features. That might be proper. But for the test of infringement, that would be improper because it's the totality of the design that one would look at. So you could possibly distill out those features that are not novel and then make the comparison. I think that would be proper. But in this case, that was not done. And in fact, there's 12 different features that are particularly novel. And my adversary was not able to point any prior art to show that these features were not novel. He won't point to any today either. Mr. Cicilla, let me ask you one. It's sort of, I guess, a housekeeping question in a sense. Anthony moved for summary judgment of invalidity and unenforceability, correct? Correct. And if you read the district court's opinion on those issues, it seems that the district court judge is not saying summary judgment is improper because they're disputed facts, but that the court is really granting judgment of no invalidity and no unenforceability in your favor. And yet, there's no judgment entered to that effect. How do you read the judge's ruling on the validity issues? I would like to read it that way also because I think implicitly that's what it does. But in reality, I think it's acknowledgment that there are factual questions for determination by a jury here because of the fact that everything, all the invalidity arguments that were made by my adversary have to do with questions of fact that have to be adjudicated by a jury as to what the underlying factual circumstances were. So you see the district court on the validity unenforceability issue as simply saying summary judgment is improper because they're fact issues. You don't see the court as saying I grant summary judgment of non-invalidity and non-unenforceability in favor of a meeting. Yes, because if that issue wasn't briefed as such, I believe that the proper approach would be to find that there are these factual determinations. As much as I'd like to say that those defenses fail entirely, which is my opinion, because they fail to meet that very high, clear, and convincing standard, I think there are questions of fact here that must go back to a jury. That's helpful because I didn't read the opinion. It looks like a definitive ruling, but yet there was no judgment. So that's why I wanted to ask. Thank you. Especially with regards to the issues of intent and the materiality on the inequitable conduct and the issues concerning the claim that these pictures that were uploaded to the patent office weren't printed as well as the patent office could have done. I think those are arguments that are really tenuous at best and certainly would not meet the high burden of proof or the high standard of review for clear and convincing evidence to invalidate the patent. I think that a person of ordinary skill in the area could look at what's in the file history or even look at what was printed on the patent and understand what the design was. So you're saying even if one were to rule in your favor on the infringement issue and send it back on that, that Anthony would still be able to assert its validity and unenforceability claims against you in the district court? Barring some other reason not to, that's the way I would interpret it as well. Otherwise, the court would again be inserting itself into the position of fact finder on those very factual determinations. And I think that's kind of what the error is. And so I have to be candid with this court that the error that occurred with regards to one side of the case also permeated the other side of the case, and the court inserted itself. Is their discovery still open? Are they still able to present additional evidence of prior art? Discovery is closed. There was a pretrial conference order that was signed and filed with the court prior to the court rendering its decision in the summary judgment. And for background, the reason why the design patent was not brought up in the first case is because it subsequently issued after the filing of that action. There was a design patent in which case are you talking about? In the first immediate case, there were also design patents of the paradisio version, but they were basically a bed and some side tables. This design patent issued a little bit later having to do with the dresser in the mirror configuration. I see. You're just explaining why these cases didn't come up as one package. I have a feeling if they came up as one package, the result would have been the same as the first immediate case because the issues are very similar. And the court applied the same approach it did in the last most perceivable judgment in a defective fashion about construing the design patents based upon their differences, once you found out what those differences are, and then saying, oh, hey, the accused product does not have these differences in dissection, and so therefore there's no infringement. And so it made those two mistakes about how it construed the design patent and then inserted itself to be a fact finder, not looking at the overall design, but looking at those details. I would also state that some of the other issues about failure to name other vendors, I think that that's also a red herring because of the fact that the way the design patent law works is that you identify those features that are not novel, and you can distill those out. So, for example, if there is a mirror that has a highly reflective surface in it, you don't have to disclaim, I'm not claiming a reflective surface on my design. And I guess the position is of the defendant is that if there are certain features in your design that are not entirely yours, like having a reflective surface or a marble top, because other people have had marble, that you should somehow disclaim that. But that has never been the law of the circuit, that you should have to take your design and go through every single feature, let's say if there's a curved surface or a straight line, say, oh, that straight line isn't mine, that's really from the prior art. And the other issue, too, that I think was raised on appeal by the other side is that one of the designers, Mr. Schmidt, had an office full of all kinds of books and catalogs, and somehow he should have taken all those books and catalogs and somehow filed them with the patent office's prior art, which would have been ridiculous because I can't see... Is it your contention that it's the combination that's novel here, or that he actually was the first person to come up with a lion foot bedpost? The idea of having a five-footed lion foot post is the novel point because everyone knows a lion only has four toes with a two-clawed back. Well, you don't all know that. But thank you for telling me. Sorry about that, Your Honor. But there are 12 other features that we've identified as very novel aspects of our design that can't be found in the prior art, and in fact, in reading the briefs, the defendant has not come up with any prior art to show that those 12 designs, those design elements were not found in the prior art. So I don't have to get to the issue of whether or not the selection of things that are old in the art and arranged in a new way... You mean there's never been scroll work at the apex of a mirror before? Of the particular curvature and type that are shown in the design patent and copy... You mean there's never been a mirror frame with that kind of off-rectangular shape? This is a little hard. You're stretching my credibility here a little bit. As I look at your 12, and I think of the dressers I have seen in my life, and they certainly do not seem to be markedly different from what you're describing here as your own creation. Well, I would address the Court to the figure 4 of the design patent that shows the particular straight, two straight sides, and then the particular curvature. So in the narrow aspects, by the way, which were copied by Anthony, that's what our position is, that that is a point of novelty. Now, I agree with the Court, the fact that you have an inlay marble into the top of a dresser, that's not novel, but we're not claiming that as a point of novelty. We're simply referencing the fact that the particularly narrow features that we've identified... The side profile is actually one of your 12. The shape of the marble insert, those things are completely novel? Yes, there's been no prior art that we're aware of that shows this. Just because there's some minor difference of shape, that makes them novel? If there's one inch that varies from anything that can be found in the prior art, that's your definition of novelty then, right? You're not talking about the side profile of this dresser as being inherently different from anything that's ever occurred before. And I understand that from a utility standpoint. I agree with the Court, but when it comes to a design patent such as this... Well then, if you're going to be that particular and say one inch, two inches off, why can't we be equally particular with the infringement ruling and say if they have varied from your design in the slightest particularity, they are also different and different enough to avoid infringement? I think the difference, Your Honor, is that if one were to take someone's design... Why isn't your validity standard going to apply for infringement is what I'm asking. I think there are validity questions here that the defendants could have or should have or may be able to raise. No, no, no, no. Listen to my question. Why isn't the standard that you use to avoid an invalidity judgment, and you're talking about minor, tiny differences, why don't we say then if they can, in a similar manner, avoid you with at least three minor differences, why haven't they not infringed, just as the District Court found? Well, Your Honor, that analysis I understand, but the devil's in the details. And I say, well, what is the prior art in which we're comparing it against? So talking about that tabletop, what tabletop did they come up with, with the curvature and shape? They haven't come up with anything. It's not in their briefs. So I have to compare and contrast with what the prior art is versus what the accused product is and what is the design. And there might be a range in there. Well, you're talking to me nicely about your validity argument. We're talking about the standard here. And I agree with you. The standard is very particular. And if they have varied from you in any minor detail, you get exactly what the picture shows and nothing more. Why then isn't the District Court correct that there's no infringement here? Because the test, the Gorham test that this Court has applied, says that you look at the totality of the design, that you don't say there's a slight curve change and therefore you don't infringe. And the way the test has been articulated, it's not a dissection test. It's the overall test. Otherwise, someone could take someone's design, make one little change, one little thing, and say, hey, we don't infringe. We made a slight little change. Even though all the public and all the purchasers are all confused and there is an actual substantial confusion out there, substantial similarity. Thank you, Mr. Cicillo. You've had the great benefit of an unresponded to argument. We'll take the case under advisement. Next case is In re.